William D. DOWNES, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 401, 1999.

Supreme Court of Delaware.

Submitted: Jan. 17, 2001.
Decided: March 30, 2001.

Jerome M. Capone, Esquire, Wilmington, Delaware, for Appellant.

William E. Molchen, Esquire, and Timothy J. Donovan, Jr., Esquire (argued) Deputy Attorneys General, Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, BERGER and STEELE, Justices.

PER CURIAM:

In this appeal, we consider the relationship between a motion for postconviction relief under Superior Court Criminal Rule 61 and a motion for a new trial under Superior Court Criminal Rule 33. Defendant filed a Rule 61 motion and argued, among other things, that he is entitled to relief because of newly discovered evidence. The trial court rejected the newly discovered evidence claim for several reasons, including the fact that under Rule 33 such a claim must be brought within two years of the final judgment. Although we agree that the claim fails, we find nothing in the relevant rules to preclude a defendant from using Rule 61 to seek relief on the basis of newly discovered evidence. Thus, to the extent that a defendant is time barred under Rule 33, we hold that he or she may seek the same relief under Rule 61, subject only to the limitations of that rule.

## Factual and Procedural Background

William D. Downes was convicted of attempted murder, first degree assault and other charges in connection with an attack on Amy Royal. In Downes' direct appeal, this Court described the relevant facts as follows:

[On the evening of August 24, 1994,] Downes summoned William R. Mariner ("Mariner") to his home. According to Mariner, the two men then went to a trailer owned by Donnie Nichols ("Nichols"), where Nichols lived with Samuel Medley ("Medley") and Eddie Anthony. Once there, Downes entered Nichols' trailer and, according to the testimony of Medley, pointed what appeared to be a handgun at Medley and then, after determining that Medley was alone, exited the trailer. Mariner further testified that, after leaving Nichols' trailer, he drove Downes to the residence of Royal and Harvey Baker ("Baker"), where Downes proceeded to fire several shots from an assault rifle into the home. The bullets missed Baker, but hit Royal.

This Court affirmed Downes' convictions in 1996.[1]

Slightly less than three years later, Downes filed a Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61. His principal claim was that Mariner lied when he testified against Downes. In support of this claim, Downes submitted the affidavit of Carolyn Carney, Mariner's former girlfriend. Her affidavit says that she was in the courtroom when Mariner testified that, on the day of the shooting, he picked Carney up from work and spent the evening watching movies with her. According to Carney, neither statement was true. Downes also submitted the affidavit of his friend, Franklyn

---

1. *Downes v. State,* Del.Supr., 1996 WL 145836 (1996).

James White, who states that Mariner admitted that he lied "a lot" on the witness stand in the Downes trial.

## Discussion

Downes raises eight claims for postconviction relief: (1) Mariner's perjury denied him a fair trial; (2) Medley's perjury or confusion about whether Downes pointed a gun at Medley requires reversal of the reckless endangering and possession of a firearm convictions; (3) the trial court improperly instructed the jury on possession of a deadly weapon instead of possession of a firearm; (4) under the doctrine of transferred intent, he could not be charged with the attempted murder of Baker; (5) the trial court erred in ruling, as a matter of law, that a "firearm" is a deadly weapon; (6) the burglary conviction must be reversed because there was no evidence that Downes entered a dwelling "at night;" (7) there was insufficient evidence that Downes entered the dwelling unlawfully; and (8) Downes was denied effective assistance of counsel. The trial court held that most of the claims were procedurally barred and that the remaining claims lacked merit. We agree and, with respect to claims (2)—(8), we affirm on the basis of the Superior Court's decision dated August 12, 1999.[2] The new evidence claim raises one issue that we believe merits additional attention.

 Downes argues that his affidavits prove that Mariner lied on the witness stand. Since Mariner was the State's star witness, Downes contends that this new evidence of perjury requires a new trial. The trial court considered this both as a "witness recantation" claim under *Blankenship v. State*,[3] and a "newly discovered evidence" claim under *Lloyd v. State*.[4] We

find no abuse of discretion in the trial court's conclusions:

> In the defendant's argument, he cites *Larrison v. U.S.* and *Blankenship v. State*. These cases involve the standards which apply in considering a motion for a new trial based upon recantation. Mariner has not recanted, so the *Larrison* factors are not appropriate for consideration. Even if they were, the defendant cannot expect this Court to accept that he was taken by surprise concerning the testimony of Mariner. He was aware of Mariner's statement to the police by way of discovery and the primary focus of the defense during the trial was to discredit Mariner and make him out to be a liar before the jury.

> If the defendant brings these affidavits before the Court seeking a new trial because of new evidence, then . . . [t]o be successful on a new trial application, the defendant must establish (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial and could not have been discovered before by the exercise of due diligence; and (3) that it is not merely cumulative or impeaching.

> Applying this test, the defendant also fails. The defendant knew going into the trial that the State's case was based upon the testimony of Mariner. Mariner's credibility was attacked in cross-examination and through other means. Defendant merely seeks to present impeaching evidence to have another chance with another jury. In making this decision, I have considered the entire record. My conclusion then and now is that the State's case was strong. I do

---

**2.** *Downes v. State,* Del.Super., 1999 WL 743629.

**3.** Del.Supr., 447 A.2d 428 (1982).

**4.** Del.Supr., 534 A.2d 1262 (1987).

not find that the present attempt to paint Mariner as a perjurer based upon a collateral matter would have changed the jury's verdict had the "new evidence" been known at trial. I note that Mariner's testimony about that evening's events was in part corroborated by the Medley testimony involving the burglary incident; i.e., whether the defendant had a gun when he entered the trailer. In summary, I find that the defendant offers only potential impeaching evidence about collateral testimony. (Citations omitted.)[5]

The trial court also noted that, under Rule 33, motions for a new trial based on newly discovered evidence must be filed within two years of the final judgment. Since Downes' convictions were upheld on direct appeal on May 1, 1996, the trial court ruled that his present application, filed after May 1, 1998, was time barred. Although this ruling does not affect the result, since the court considered and rejected Downes' new evidence claim on the merits, we conclude that the trial court erred in applying the Rule 33 time limitation to a postconviction motion brought under Rule 61.

Rule 33 provides that the trial court may grant a new trial "in the interest of justice." If a defendant seeks a new trial on the basis of newly discovered evidence, the motion must be filed within two years after final judgment; a motion based on any other ground must be filed within seven days after the verdict. "The time limits of Rule 33 are generally 'jurisdictional and mandatory.'"[6] Rule 61 is broader in scope than Rule 33. It governs all applications "to set aside a judgment of conviction or a sentence of death on the ground that the court lacked jurisdiction or on any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction or a capital sentence." Rule 61 motions are subject to certain bars, including a three year time limitation.[7]

Downes' motion was filed more than two years, but less than three years, after his convictions became final. As a result, it was timely under Rule 61 but would have been untimely if brought under Rule 33. The question thus arises whether a defendant may avoid the time bar of Rule 33 by bringing a motion for a new trial, based on newly discovered evidence, as a Rule 61 motion. In *Weedon v. State*,[8] this Court stated that, "[e]ven if Rule 33 applies...it does not control... whether a defendant also can move for a new trial under Rule 61 if the motion can properly be classified as seeking postconviction relief." Consistent with that observation in *Weedon*, we now hold that a defendant may use Rule 61 to seek a new trial even if such a motion would be time barred under Rule 33. We reach this conclusion because: (i) nothing in Rule 33 purports to make it exclusive, and (ii) the scope of Rule 61 expressly includes *any* ground for a collateral attack on a conviction. A defendant who seeks a new trial under Rule 61 must understand, however, that his or her claim will be subject to all of the provisions of Rule 61, including the bars to relief.

### Conclusion

Based on the foregoing, the decision of the Superior Court denying Downes' mo-

5. *Downes v. State,* Del.Super., 1999 WL 743629.

6. *Maxion v. State,* Del Supr., 686 A.2d 148, 151 (1996) (Citation omitted.).

7. Super Ct. Cr. R. 61(i)(1)-(4).

8. Del.Supr., 750 A.2d 521, 527 (2000).

tion for postconviction relief is AF-
FIRMED.